UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NANCY GAIR, individually and on behalf of those similarly situated<br><br>Plaintiff,<br><br>v.<br><br>ISIS PARENTING, INC. (f/k/a Isis Maternity, Inc.), PETER DELAHUNT, MARK SCHWARTZ, PALLADIN CONSUMER RETAIL PARTNERS, LLC<br><br>Defendants. | CIVIL ACTION NO.: 14-13657 |

## COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

Nancy Gair, individually and on behalf of other similarly-situated former employees (the "Employees") of Isis Parenting, Inc. (f/k/a Isis Maternity, Inc.)("Isis"), brings this complaint to recover against Isis and the other defendants for their role in managing Isis and in particular, failing to warn the Employees that Isis would be shut down and that the employees would be suddenly laid off (the "Shutdown") and for Isis' failure to compensate its employees who were childbirth and parenting instructors ("Instructor Employees") for thousands of hours of required work.

### Preliminary Statement

1.  For over 10 years, Isis served the greater Boston community with child and parenting products, services and specialized classes.  Isis employed approximately 200 employees including retail associates and numerous Instructor Employees who worked as a

close-knit team delivering Isis's products and services across four stores in the greater Boston area (the "Boston Stores").

2.     Without any prior notice, on the afternoon of January 14, 2014, Isis management held a conference call for all employees, during which they announced the immediate Shutdown and termination of the Employees.  The Shutdown immediately placed hundreds of Employees out of work without any opportunity to plan for transition, training or search for new employment.  The Shutdown shocked and caused serious harm both to the Employees and the community of families that relied on Isis for its unique source of child birthing and parenting resources.

3.     Despite the failure of anyone at Isis to provide notice to the Employees prior to the Shutdown, the Defendants herein were well aware of, and were directly involved in, the decisions leading to the Shutdown long before January 14, 2014.  Nonetheless, Mark Schwartz, the board member representing Isis's largest equity investor, Palladin Consumer Retail Partners LLC ("Palladin") (Schwartz and Palladin together the "Investor Defendants") acted in the Investor Defendants' interests in withholding any warnings of the shutdown.  In fact, in the months leading up to the Shutdown, as Isis faltered financially, the Investor Defendants scrambled to collect and secure Isis's intellectual property in order to shore up their ability to liquidate Isis and recoup some of their investment.  The Investor Defendants feared that any advance notice of the Shutdown would jeopardize their investment return and therefore, along with the other Defendants, refused to inform the Employees of the coming Shutdown.  Yet, as Isis was quickly sinking, the Investor Defendants grabbed at whatever lifeboats remained for their benefit and refused to tell the employees the ship was going down.

4. As further set forth herein, the Investor Defendants asserted direct control and involvement in the operations of Isis, including by installing their own management team beholden to the Investor Defendants, and acted in their own interests in making the decisions that lead to the Shutdown and failure to warn the Employees in violation of the federal Worker Adjustment and Retraining Notification Act (the "WARN Act"), 29 U.S.C. § 2101 *et seq.*

5. Additionally, for years Isis required its Instructor Employees to perform work necessary to set up for and "break down" classrooms for each class taught. However, Isis failed to pay its Instructor Employees' wages for the required time spent. Defendants Peter Delahunt and Mark Schwartz directly oversaw Isis's financial and human resource management and are liable, along with Isis, for the Instructor Employees' unpaid wages in accordance with the Fair Labor Standards (the "FLSA"), 29 U.S.C. § 201 *et seq.* and Mass. Gen. L. c. 149 § 148 (the "Wage Act").

### Jurisdiction and Venue

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5), because Plaintiff alleges claims arising under the federal WARN Act and the FLSA. This Court has jurisdication over the Plaintiff's Massachusetts Wage Act and unjust enrichment claims pursuant to 28 U.S.C. § 1367(a).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1204(1)(5) because the claims herein arise out of conduct occurring in the District of Massachusetts.

### Parties

8. Plaintiff Nancy Gair is an individual who was employed as an instructor at Isis from approximately September 2007 until the Shutdown.

9. Isis is a Delaware corporation with its headquarters located at 110 Second Avenue, Needham, Massachusetts 02494.

10. Peter Delahunt served as Chief Financial Officer of Isis and was responsible for financial management of all of Isis's retail operations, inventory, employment matters and facilities.

11. Mark Schwartz is the president and Chief Financial Officer of Palladin Consumer Retail Partners, LLC ("Palladin") and was at all relevant times a member of Isis's Board of Directors. Shwartz was substantially involved in the management of all aspects of Isis's operations, directly and through a team of managers hand-picked by Schwarz and Palladin to act in the interests of Palladin.

12. Palladin is a Delaware limited liability company located in Boston, Massachusetts and the successor to Palladin Capital Group, Inc. Palladin held a substantial equity ownership of Isis, and through its financial position, board seats, and hand-picked management team Palladin had *de facto* financial and managerial control of Isis, including control over the decision to shut down Isis's operations without notice to the Employees.

**Facts**

13. For more than 10 years, Isis provided child-rearing products, resources and parenting and child birthing classes.

14. Isis began at a location in Brookline and quickly grew to additional locations in the Greater-Boston area. At the time of the Shutdown, Isis provided its services from four Boston Stores located at its headquarters in Needham, Arlington, the Prudential Center and Hanover.

15. In connection with expansion efforts, Isis also briefly operated so-called "nest" centers within Babies 'R Us retail stores in Atlanta, Georgia and in Dallas, Texas.

### *Isis's Boston Stores Operated as a Single Site of Employment*

16. The Boston Stores were located within geographic proximity to one another and all within the Boston Metropolitan Area.

17. Essential functions of each center including, but not limited to, inventory, sales, pricing, stocking, re-stocking, scheduling, class offerings, and personnel matters were centralized through Isis's Needham headquarters and staff and managed across the Boston Stores as a single entity.

18. All essential decisions regarding these functions were made for each center by the same centralized managers.

19. While each store had its own manager, store managers were not responsible for purchasing inventory, equipment or supplies; were not involved with finances, vendor accounts, or leases, and did not directly hire, manage or terminate Isis employees working across the various Boston Stores.

20. Class staffing, inventory and class offerings were managed across the Boston Stores as a single entity. For example, inventory was regularly monitored across centers and transferred by centralized operations from one store to another as necessary to balance and maintain proper inventory across the Boston Stores.

21. Centralized management regularly assigned Instructor Employees to classes across the Boston Stores depending on need and were often asked to substitute for instructors at different centers.

22. Course materials, curriculum, marketing materials and other content was created through Isis headquarters and was disseminated and utilized across the Boston Stores.

23. All class scheduling, pricing, wages and timekeeping were centralized and performed through the Isis headquarters, not at each individual store.

24. All payroll functions were performed though Isis headquarters.

25. Finances, sales and pricing were determined for all Boston Stores as a whole.

26. Retail products were selected, purchased and priced for sale for the Boston Stores through Isis headquarters.

27. Customers purchased product though Isis's centralized online retail store and utilized a centralized online library of course materials for courses taught across the Boston Stores.

28. The Boston Stores operated as a "single site of employment" as that term is used in 29 U.S.C. § 2101(a)(2)-(3) and regulations promulgated thereunder, including 20 C.F.R. § 639.3(i)(3).

*Isis is an Employer and Caused a Mass Layoff*
*Within the Meaning of the WARN Act*

29. On and around the time of the Shutdown, Isis employed approximately 200 employees throughout the Boston Stores.

30. On and around the time of the Shutdown, and within the 60 days prior, Isis employed more than 100 employees other than part-time employees, or more than 100 employees who, in the aggregate, worked at least 4,000 hours per week, as defined in the WARN Act.

31.     The Shutdown caused employment loss at the Boston Stores during the preceding 30-day period of at least 33% of Isis's employees and 50 employees, other than part-time workers.

32.     Leading up to and related to the causes of the Shutdown, the Defendants terminated additional employees within 90 days of the Shutdown which terminations, in the aggregate, resulted in the loss of employment at the Boston Stores of at least 33% of Isis's employees and 50 employees, other than part-time employees.

33.     The Defendants caused a "plant shutdown" and/or "mass layoff" within the meaning of § 2101(a)(2) and (3) of the WARN Act.

### *The Defendants Directly Managed and/or Closely Controlled the Management of Isis's Daily Operations and Decisions Related to the Shutdown*

34.     The Defendants exercised control over the management of Isis, including decisions regarding its expansion into the "nest" locations in Dallas and Atlanta, sales, finances and personnel.

35.     Schwartz held a board position in order to assert Palladin's control over the management of Isis, and Schwartz, in fact, was actively involved in management decisions and the decisions leading to the Shutdown and acted at all times in the interests of the investor, Palladin.

36.     Schwartz and Palladin hand-picked a team of directors and managers they could control and who would be, and were, beholden to the interests of Palladin and would, and did, act in their management roles, including employment and staffing decisions, on behalf of Palladin.

37. In addition to Schwartz' board position, Palladin installed Jane Pemberton as Director, who at all times through the Shutdown, acted on Palladin's behalf.

38. Schwartz and Palladin's hand-picked management team included Heather Coughlin, who was installed after Schwartz and his team ousted longtime CEO Jo McChesney.

39. Schwartz and Palladin also installed Peter Delahunt as Chief Financial Officer as well as several other upper-level management team positions (the "Investor Management Team").

40. The Investor Management Team was directly involved in decisions concerning Isis's expansion, sales and human resources and managed Isis in the interests of the Investor Defendants.

41. Through its financial position, board seats and hand-picked management team, Palladin had *de facto* financial and managerial control of Isis, including the decisions to shut down Isis's operations without notice the employees.

42. Schwartz was both the Chief Executive Officer of Palladin and a Director of Isis.

43. Defendants Schwartz, Palladin and Delahunt were directly involved in the decisions that lead to the Shutdown and in the decisions not to warn Isis's employees.

44. Among other things, Schwartz had put in place a management team that acted in the interests of and at the behest of Palladin. That Investor Management Team was directly involved in the timing and carrying out of the Shutdown.

45. Delahunt, as CFO, was acutely aware of Isis's impending closure. Months before the Shutdown inventory was dramatically cut, restocking was limited, bills to vendors went unpaid and rent was withheld at at least one location – the Arlington Store.

46.     Prior to the Shutdown the landlord of the Arlington store had threatened and/or brought eviction proceedings.

47.     Schwartz and Palladin made the decision not to capitalize Isis's operations, and to liquidate its assets.

48.     Yet the Defendants and their management team did nothing to warn Isis's Employees until 4:00 p.m. on January 14, 2014, when the Employees were told that Isis would close immediately without further notice and would shut its doors, other than to permit a skeleton crew of staff to assist in liquidating Isis's inventory the next day.

### *Isis Instructors Were Not Paid Wages for Time Worked in Setting Up and Breaking Down Classrooms*

49.     Each class taught by the Instructor Employees required time for set up and break down of the classroom, for which the Instructor Employees were not compensated.

50.     Plaintiff, and each of the Instructor Employees, was required to arrive at the Isis store prior to the scheduled class in order to set up.

51.     Set up included, but was not limited to, moving equipment, mats, chairs, tables, setting out materials and/or preparing audio-visual equipment.

52.     Set up for each class required, on average, approximately 15 minutes of the employee's time.

53.     Plaintiff, and each of the Instructor Employees, was required to remain following each scheduled class to "break down" and clean up the classroom.

54.     Break down and clean up included, but was not limited to, putting away equipment, mats, chairs, tables, course materials, and/or audio-visual equipment and/or cleaning various equipment or the classroom.

55. Break down and clean-up for each class required, on average, approximately 15 minutes of the employee's time.

56. Plaintiff, and each of the Instructor Employees, was not compensated for the time worked in performing the required set up and breakdown/clean-up of the classrooms before and after each class.

### Collective and Class Action Allegations

57. Plaintiff brings this action individually and on behalf of two classes of similarly-situated former Isis employees.

#### *WARN Act Claims*

58. With respect to Count I, violations of the WARN Act, Plaintiff brings this action on her own behalf and on behalf of all other former Isis employees who were terminated within 60 days of the Shutdown on January 14, 2014 (the "WARN Act Class").

59. The WARN Act Class is defined as: "All individuals employed by Isis at the time and within 60 days prior to the Shutdown on January 14, 2014."

60. The members of the WARN Act Class, believed to be approximately 200 former employees, are so numerous that joinder of all WARN Act Class members is impractical.

61. There are issues of law and fact common to all WARN Act Class members. All WARN Act Class members have identical claims – namely that the Defendants failed to provide the required advance notice of the Shutdown and that each WARN Act Class member was terminated as a result of the Shutdown. The common questions of law and fact regarding the Defendants' liability under the WARN Act predominate over any questions unique to individual WARN Act Class members.

62. Plaintiff's claims are typical of all members of the WARN Act Class, as all members of the class have the same claims and are seeking the same recoveries – 60 days backpay.

63. Section 2104(a)(5) of the WARN Act expressly contemplates that claims will be brought on behalf of a class of similarly-situated former employees.

64. The Plaintiff and her counsel will fairly and adequately represent the interests of the WARN Act Class.

65. A class action is a superior method of adjudicating the claims of similarly-situated employees because their claims have a common basis in law and fact and the relief sought is too small to warrant separate actions.

*FLSA Collective Action*

66. With respect to Count II, FLSA claim, Plaintiff brings this claim pursuant to 29 U.S.C. § 216(b), on behalf of herself of all other similarly-situated Instructor Employees who elect to opt into this action pursuant to the FLSA, 29 U.S.C. § 216(b) who taught Isis classes within the past six (6) years.

67. Plaintiff and other Instructor Employees are similarly situated in that they all were required to perform similar set up and break down work before and after each class taught, for which they were not compensated.

*Massachusetts Wage Claims*

68. With respect to Counts III and IV, for non-payment of wages, Plaintiff brings this action on her own behalf and on behalf of all other Instructor Employees (the "Wage Class").

69. The Wage Class is defined as: "All Isis employees who taught Isis classes within the past six (6) years."

70. The members of the Wage Class, believed to be approximately 100 former Isis employees who taught Isis classes, are so numerous that joinder of all Wage Class members is impractical.

71. There are issues of law and fact common to all Wage Class members. All Wage Class members have identical claims – namely that the Defendants failed to pay wages for time instructors worked in setting up for and breaking down after classes taught. The common questions of law and fact regarding the Defendants' liability for non-payment of wages predominate over any questions unique to individual Wage Class members.

72. Plaintiff's claims are typical of all members of the Wage Class, as all members of the class have the same claims and are seeking the same recoveries – payment of unpaid wages for required set up and breakdown of the classrooms.

73. Section 27 of the Massachusetts Wage Act expressly contemplates that claims will be brought on behalf of a class of similarly-situated former employees.

74. The Plaintiff and her counsel will fairly and adequately represent the interests of the Wage Class.

75. A class action is a superior method of adjudicating the claims of similarly-situated Instructor Employees because their claims have a common basis in law and fact and the relief sought is too small to warrant separate actions.

### COUNT I
### WARN Act Violations Against All Defendants

76. Plaintiff repeats and re-alleges all of the foregoing allegations as if fully set forth herein.

77. The Defendants caused a shutdown and/or mass layoff terminating the Warn Act Class without notice as required by the Warn Act.

78.     As a result, the Plaintiffs and the Warn Act Class suffered an employment loss as a result of the shutdown and/or mass layoff.

79.     Pursuant to Section 2104(a) of the WARN Act, Plaintiff and the Warn Act Class are entitled to 60 days back pay and benefits, plus their attorneys' fees.

## COUNT II
### FLSA Violations Against
### Defendants Isis, Delahunt and Schwartz

80.     Plaintiff repeats and re-alleges all of the foregoing allegations as if fully set forth herein.

81.     At all relevant times, Isis has been and continues to be an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA 29 U.S.C. §203(d).

82.     At all relevant times, Isis employed Plaintiff and the Instructor Employees within the definition of the FLSA 29 U.S.C. §203(e)(1).

83.     At all relevant times Isis has had gross operating revenues in excess of $500,000.00, as defined under 29 U.S.C. 203(s)(1)(A)(i) and (ii).

84.     The FLSA requires Isis to compensate all non-exempt employees for hours worked.

85.     Plaintiff and the other Instructor Employees were not exempt from the right to receive pay under the FLSA.

86.     Plaintiff and the other Instructor Employees are entitled to be paid for all hours worked.

87.     Isis has failed to make, keep and preserve records with respect to the Plaintiff and the Instructor Employees sufficient to determine the wages, hours and other conditions and

practices of employment in violation of the FLSA, 29 U.S.C. §§201 et. seq., including 29 U.S.C. §211(c) and §215(a).

88.     Defendants Delahunt and Schwartz exercised substantial control over the management of Isis's operations and were intimately involved in personnel decisions, as set forth in this Complaint, including those related to hiring, firing and wages and are liable for the non-payment of wages within the meaning of the FLSA

89.     Isis, Delahunt and Schwartz's conduct as alleged herein constitute willful violations of the FLSA.

90.      Plaintiff and those Instructor Employees who opt into this litigation are entitled to damages in the amount of their respective unpaid compensation, plus liquidated damages as provided by the FLSA, 29 U.S.C. §216(b), attorneys' fees and other such legal and equitable relief as the Court deems just and proper.

**COUNT III**
**Violation of Massachusetts Wage and Hour Act**
**Against Defendants Isis, Delahunt and Schwartz**

91.     Plaintiff repeats and re-alleges all of the foregoing allegations as if fully set forth herein.

92.     Isis, Delahunt and Schwartz are "persons having employees in [their] service" within the meaning of the Massachusetts Wage Act.

93.     The Defendants failed to pay the Plaintiff and the Wage Class wages earned for work that was required to be performed, and that was performed, by the Plaintiff and the Wage Class in violation of Mass. Gen. L. c. 149, § 148.

94.     Plaintiff has received the assent in writing of the Massachusetts Attorney General to pursue this claim.

95. Pursuant to Mass. Gen. L. c. 149, § 150, Plaintiff and the Wage Class are entitled to recover their damages for unpaid wages and benefits, treble damages, costs and reasonable attorneys' fees.

## COUNT IV
### Unjust Enrichment/Quantum Meruit
### Against Defendants Isis, Delahunt and Schwartz

96. Plaintiff repeats and re-alleges all of the foregoing allegations as if fully set forth herein.

97. Plaintiff and the Wage Class provided substantial benefit to the Defendants by performing required work before and after each class taught.

98. Defendants accepted and in fact required this work and enjoyed and retained the benefit of that work, without ever compensating the Plaintiff or the Wage Class for their work.

99. Defendants have been unjustly enriched while refusing to compensate the Plaintiff and the Wage Class, to the Plaintiff and the Wage Class's detriment.

100. Defendants should therefore be required to compensate the Plaintiff and the Wage Class for their unjust enrichment in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter the following relief for Plaintiff and all others similarly-situated:

(a) An order (1) certifying two classes, the WARN Act Class and Wage Class, of similarly-situated individuals as outlined above, pursuant to Fed. R. Civ. P. 23, (2) appointing Plaintiff as class representative, and (3) appointing Plaintiff's counsel as class counsel;

(b) An order designating the FLSA claims as a collective action pursuant to the FLSA and issuing prompt notice pursuant to 29 U.S.C. § 216(b).

(c) On Count I, awarding damages in an amount to be determined at trial, representing 60-days back pay and reasonable costs and attorneys' fees;

(d) On Count II, awarding damages in an amount to be determined at trial, representing unpaid wages and benefits, plus liquidated damages as provided by the FLSA, 29 U.S.C. §216(b), and attorneys' fees;

(e) On Count III, awarding damages in an amount to be determined at trial, representing unpaid wages and benefits, treble damages, costs and reasonable attorneys' fees;

(f) On Count IV, awarding damages in an amount to be determined at trial; and

(g) Such other legal and equitable relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff on her own behalf and on behalf of the Warn Class and the Wage Class, requests a trial by jury on all claims so triable.

NANCY GAIR, individually and on behalf of all others similarly-situated,

By her attorneys,

/s/ Nicholas J. Rosenberg
Nicholas J. Rosenberg (BBO No. 657887)
Josh Gardner (BBO No. 657347)
GARDNER & ROSENBERG P.C.
33 Mount Vernon Street
Boston, MA 02108
Tel: 617-390-7570
Fax: 617-390-7570
nick@gardnerrosenberg.com

Dated: September 19, 2014